IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEMENTRICE MARSHALL<br>305 N. Crestwood Dr.<br>Wilmington, NC 28405 | ) ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE BUDD GROUP, INC.<br>2325 South Stratford Road<br>Winston Salem, NC 27103 | ) ) ) | |
| | ) | **COMPLAINT FOR DAMAGES** |
| **Serve also:** | ) | **AND REINSTATEMENT** |
| THE BUDD GROUP, INC.<br>c/o Corporation Service Company<br>2626 Glenwood Ave, Ste 550<br>Raleigh, NC 27608 | ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| | ) | |
| -and- | ) | |
| | ) | |
| THE BUDD GROUP, INC.<br>P.O. Box 25128<br>Winston Salem, NC 27114-5128 | ) ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Dementrice Marshall, by and through undersigned counsel, as his Complaint against Defendant The Budd Group, Inc., ("Defendant" or "Budd Group") states and avers the following:

## PARTIES

1. Marshall is a resident of the city of Wilmington, county of New Hanover, state of North Carolina.

2. Budd Group is a domestic corporation whose principal place of business is located at The Budd Group, Inc., 2325 South Stratford Road, Winston Salem, NC 27103.

*3.* The Budd Group, Inc. was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 2000e-2 *et seq.*

## JURISDICTION & VENUE

4. Budd Group hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Budd Group comports with due process.

5. This cause of action arose from or relates to the contracts of Budd Group with North Carolina residents, thereby conferring specific jurisdiction over Budd Group.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Marshall's state law claims because those claims derive from a common nucleus of operative facts.

## VENUE

8. Venue is proper in this District because the wrongs herein alleged occurred in this District.

9. Within 180 days of the conduct alleged below, Marshall filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 435-2025-00799 against Budd Group operating at The Budd Group, Inc., 2325 South Stratford Road, Winston Salem, NC 27103.

10. On or about December 5, 2025 the EEOC issued and mailed a Notice of Right to Sue letter to Marshall regarding the Charges of Discrimination brought by Marshall against Budd Group in EEOC Agency Charge No. 435-2025-00799.

11. Marshall received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Marshall has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Marshall has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Marshall is a former employee of Budd Group.

15. Marshall is male.

16. Budd Group hired Marshall as a Day Porter.

17. Budd Group hired Marshall as a Day Porter on or about October 21, 2024.

18. Marshall was qualified for his position as a Day Porter by his skills and experience.

19. Budd Group hired Marshall because of Marshall's qualifications.

20. Marshall continued to be qualified for his position as a Day Porter at all relevant times referenced herein by meeting Budd Group's legitimate business expectations for his performance.

21. Marshall met Budd Group's legitimate business expectations for his performance by attending work on time, not missing unexcused days of work, and timely performing his assigned work with quality.

22. Marshall was qualified for his position as a Day Porter.

23. Upon Marshall's hire, Marshall was assigned to work under Donnie Walraed.

24. Walraed is male.

25. Walraed was Marshall's direct supervisor.

26. Walraed had the authority to hire, fire, or discipline employees.

27. Walraed had the authority to hire, fire, or discipline Marshall.

3

28. Walraed had a position of power over Marshall.

29. Walraed had the authority to exercise power over Marshall.

30. Walraed in fact exercised that power over Marshall.

31. Walraed used his position to sexually harass Marshall. ("Walraed's Sexual Harassment")

32. Walraed's Sexual Harassment included putting his hand into Marshall's front pocket.

33. Walraed's Sexual Harassment included rubbing Marshall's back.

34. Walraed's Sexual Harassment included taking pictures of Marshall.

35. Walraed's Sexual Harassment included isolating Marshall in the break room by closing the door.

36. Walraed's Sexual Harassment included stepping into very close proximity to Marshall when talking to Marshall.

37. After the first incident of Walraed's Sexual Harassment, Marshall informed Walraed that Walraed's Sexual Harassment was unwelcome.

38. Marshall continued to inform Walraed that Walraed's Sexual Harassment was unwelcome after each incident of Walraed's Sexual Harassment.

39. Walraed continued to perpetrate Walraed's Sexual Harassment against Marshall over Marshall's objections.

40. Walraed's Sexual Harassment occurred during the course and scope of Marshall's employment.

41. Walraed used Walraed's position in order to perpetrate Walraed's Sexual Harassment.

42. Walraed's Sexual Harassment unreasonably interfered with Marshall's work performance.

43. Walraed's Sexual Harassment created an intimidating, hostile, and offensive working environment.

4

44. Walraed's Sexual Harassment was severe.

45. Walraed's Sexual Harassment was pervasive.

46. A reasonable person in Marshall's position would find Walraed's Sexual Harassment severe.

47. A reasonable person in Marshall's position would find Walraed's Sexual Harassment pervasive.

48. Marshall found Walraed's Sexual Harassment to be severe.

49. Marshall found Walraed's Sexual Harassment to be pervasive.

50. Despite Walraed's Sexual Harassment's interference with Marshall's work environment, Marshall continued to perform his job responsibilities in a way that met or exceeded Budd Group's legitimate business expectations.

51. On or about November 20, 2024, Marshall reported and opposed discrimination. ("Marshall's Report of Discrimination")

52. Marshall's Report of Discrimination was made orally.

53. Marshall's Report of Discrimination was made to Walraed.

54. In Marshall's Report of Discrimination, Marshall confronted Walraed about Walraed's Sexual Harassment.

55. In Marshall's Report of Discrimination, Marshall informed Walraed that he believed that Walraed's Sexual Harassment was sexual harassment.

56. In the conversation where Marshall made Marshall's Report of Discrimination, Marshall also requested the contact information of Human Resources.

57. In response to Marshall's Report of Discrimination, Walraed refused to provide the contact information of Human Resources.

58. In response to Marshall's Report of Discrimination, Walraed threatened Marshall.

59. In response to Marshall's Report of Discrimination, Walread threatened Marshall by telling Marshall that if Marshall made a report to Human Resources about Walread's Sexual Harassment, Waraed would have Marshall fired.

60. Marshall informed Walread that Marshall intended to make a report to Human Resources despite Walread's threat.

61. After Marshall's Report of Discrimination, Walread caused Marshall to be removed from the property by a resource officer.

62. After Marshall's Report of Discrimination, Walread terminated Marshall's employment.

63. Marshall had not been issued a verbal warning for using his phone.

64. Marshall had not been issued a written warning for using his phone.

65. Marshall had not been issued a final written warning for using his phone.

66. Marshall had received no other performance warnings during his employment.

67. Budd Group terminated Marshall's employment on or about November 21, 2024.

68. Budd Group did not provide Marshall with a reason for terminating his employment at the time of his termination.

69. Budd Group later asserted that it was because Marshall was on his phone at work.

70. Budd Group's purported reason for Marshall's termination is pretext for discrimination.

71. Budd Group's purported reason for Marshall's termination is pretext for discrimination on the basis of Marshall's sex.

72. Budd Group's purported reason for Marshall's termination is pretext for retaliation.

73. Budd Group's purported reason for Marshall's termination is pretext for retaliation for Marshall's Report of Discrimination.

74. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Marshall.

75. Upon information and belief, Marshall's termination of employment, Defendants hired or retained an individual outside of Marshall's protected class to replace Marshall.

76. As a result of Defendant's conduct, Marshall suffered, and will continue to suffer damages.

## COUNT I: <u>HOSTILE WORK ENVIRONMENT ON TH EBASIS OF SEXUAL HARASSMENT</u>

77. Marshall restates each and every paragraph of this Complaint as though it were fully restated herein.

78. Marshall was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

79. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

80. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Marshall reported the sexual harassment to his supervisor both verbally.

81. The Budd Group, Inc.'s sexual harassment of Marshall occurred while he was acting in the course and scope of his employment as a Day Porter.

82. Marshall's supervisor had knowledge of The Budd Group, Inc.'s sexual harassment and failed to take any corrective or remedial action.

83. As a direct and proximate result of The Budd Group, Inc.'s conduct, Marshall has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: <u>GENDER DISCRIMINATION</u>

7

84. Marshall restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

85. Defendants treated Marshall differently than other similarly situated employees based on his gender.

86. Defendants discriminated against Marshall on the basis of his gender throughout his employment with the company.

87. Defendants terminated Marshall's employment without just cause.

88. Defendants terminated Marshall's employment based on his gender.

89. As a direct and proximate result of Defendants' conduct, Marshall suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: <u>RETALIATION IN VIOLATION OF TITLE VII</u>

90. Marshall restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. Pursuant to 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate against an employee "because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

92. Marshall's Report of Race Discrimination opposed gender discrimination.

93. On or about November 21, 2024, Defendant terminated Marshall's employment.

94. The time between Marshall's reports of discrimination and Defendant's termination of Marshall's employment is no more than four months.

95. Defendant's terminated Marshall's employment in retaliation for opposing discrimination.

8

96. Defendant terminated Marshall's employment because of his First Complaint of Discrimination.

97. As a direct and proximate result of Defendnt's conduct, Marshall suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Dementrice Marshall demands from Defendants the following:

(a) Issue an order requiring Budd Group to restore Marshall to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Marshall for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Marshall's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*

Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:     (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Dementrice Marshall*

10

## <u>JURY DEMAND</u>

Plaintiff Dementrice Marshall demands a trial by jury by the maximum number of jurors permitted.


/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)

11